IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**MEIKA DESEAN BRITTON**                                            **PLAINTIFF**

**v.**                                      **CIVIL ACTION NO. 1:19-CV-840-HSO-JCG**

**JOE ERRINGTON, et al.**                                          **DEFENDANTS**

## REPORT AND RECOMMENDATION

BEFORE THE COURT are the following motions: Plaintiff's Motion to Demonstrate that Administrative Remedies were Exhausted by Plaintiff (ECF No. 24) and Defendants' Motion for Partial Summary Judgment based on Failure to Exhaust Administrative Remedies (ECF No. 28). Having considered the submissions of the parties, the record, and relevant legal authority, the undersigned United States Magistrate Judge recommends that Plaintiff's Motion to Demonstrate that Administrative Remedies were Exhausted by Plaintiff be denied and Defendant's Motion for Partial Summary Judgment based on Failure to Exhaust Administrative Remedies be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Meika DeSean Britton, who is proceeding *pro se* and *in forma pauperis*, filed suit against Defendants Joe Errington, Pelicia Hall, Daryl Baughn, Gia Nicole McLeod, Laura Tilley, Timothy Barnes, Georgia Shelby, Ashley Robinson, Michelle Bulger, Darlene Frost, Sarah James, and Jarita Bivens on November 8, 2019. James and Bivens have since been dismissed (ECF No. 9). Britton's Complaint concerns his time spent at the South Mississippi Correctional

1

Institution (SMCI) in Leakesville, Mississippi. His Complaint stems from his interactions with the Inmate Legal Assistance Program (ILAP), allegedly being moved to more dangerous areas of the prison, and the conditions of his confinement. He alleges that McLeod, Tilley, and Bulger overcharge inmates for postage, provide ineffective legal services, and have refused to provide him with certain documents. After an argument with Tilley, Britton received a Rule Violation Report (RVR), Tilley allegedly made threats against him, and Britton's mother called Hall and Barnes. As a result of this incident, he was moved to Unit 8, which he states is the unofficial lockdown or punishment building, and then he was later moved to Area 2. He contends that these moves to more dangerous areas were done in retaliation for his complaints about ILAP. He argues Defendants Barnes, Shelby, Robinson, Frost, Hall, Baughn, and Errington have endangered his personal safety, failed to protect him, and committed retaliatory acts towards him. Additionally, he alleges that while housed in Unit 8, he was prohibited from attending church services and educational services and did not receive yard call. Finally, he contends that the hot water in his zone went out in August 2019 and had not been fixed at the time of filing; he alleges that the lack of hot water and unsanitary conditions put him at greater risk of contracting the flu. He seeks an order requiring him to be moved from SMCI and any other reasonable relief (ECF No. 1).

Specifically, he alleges the Defendants are responsible for the following violations (ECF No. 7): Errington denied him access to religious services and yard call, failed to protect him from harm, failed to provide safe living conditions, and

failed to properly train the staff. Hall failed to properly supervise the staff and was aware of his complaints. Baughn denied him access to the Courts, as he failed to have McLeod respond to a subpoena. McLeod denied him access to the courts by causing some of his legal documents to be filed late and refusing him access to some documents. Tilley denied him access to the courts and failed to provide effective legal services. Barnes denied him access to religious services and yard call, failed to protect him from harm, and moved him in retaliation. Shelby denied him access to yard call and religious services, which he contends is a violation of the Equal Protection clause, as other units received these services; moved him in retaliation; and housed him in an unsafe environment. Robinson moved him in retaliation. Bulger was on duty when he was denied legal services. Frost denied his right to due process by allowing Robinson to forge another's initials on his RVR, and the RVR resulted in the retaliatory moves.

On May 5, 2020, the Court entered an Order directing Defendants to file any motions based on failure to exhaust administrative remedies (ECF No. 23). In response to this Order, Plaintiff filed his Motion to Demonstrate that Administrative Remedies were Exhausted by Plaintiff (ECF No. 24). He alleges he exhausted his administrative remedies, and he provides copies of some of his grievances. On August 4, 2020, Defendants filed their Motion for Partial Summary Judgment based on Failure to Exhaust Administrative Remedies (ECF No. 28) and Memorandum in Support (ECF No. 29). They argue that Plaintiff did not exhaust any claims against Hall, Errington, Baughn or McLeod; did not exhaust his

retaliation claim against Robinson; did not exhaust his claims for retaliation or an unsafe environment against Barnes and Shelby; and withdrew his ARP concerning legal services, thereby failing to exhaust his legal services claim against Tilley.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). If the movant carries this burden, the burden shifts to the non-moving party to show that summary

judgment should not be granted. *Id.* at 324. "The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 324). In the absence of any proof, the Court will not assume that the Plaintiff "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust available administrative remedies before filing a lawsuit. 42 U.S.C. § 1997e(a). This exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). A prisoner's failure to exhaust available administrative remedies undermines these purposes.

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Id.* at 95. Dismissal is mandatory where a prisoner fails to properly exhaust available administrative remedies before filing suit in federal court. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (quoting *Woodford*, 548 U.S. at 85).

5

B. <u>Analysis</u>

Defendants have moved for summary judgment on the basis that Britton has failed to exhaust administrative remedies on some of his claims. They have offered evidence that Britton has submitted several grievances. The first is a July 16, 2018 grievance about ILAP charging him for postage despite his indigent status. Tilley completed the first step response on September 20, 2018, and the affidavit from Joseph Cooley, the ARP Investigator at SMCI, indicates that Britton did not appeal to the second step (ECF No. 28-1). Next, Britton filed a grievance on May 11, 2019 claiming he was denied the right to go to religious services while on lockdown, even though Muslims were allowed to attend their religious services. Shelby completed the first step response on June 11, 2019, stating that she would look into the matter. Cooley's affidavit indicates that Britton did not appeal to the second step (ECF No. 28-2). Britton filed a third grievance on July 2, 2019. This grievance details the verbal altercation with Tilley and resulting threats, the RVR he received, the retaliatory transfer to Unit 8 and then to Area 2 by Robinson and Barnes, the disciplinary hearing with Frost and Robinson, the alleged violation of his right to Equal Protection, and the denial of educational services, religious services, and yard call. He also names Errington, Shelby, and Hall, stating that he had addressed the situation with them. Timothy Barnes completed the first step response on July 12, 2019, stating that offender housing is at the discretion of the MDOC. Britton appealed on August 1, 2019. In this step, he complained about Barnes' actions in transferring him, Robinson's retaliation, his safety concerns, and

the falsification of documents. Also included in this grievance is a June 23, 2019 letter to Hall about the incident with Tilley and the retaliatory transfer and a June 23, 2019 letter to Barnes, Errington, and Hall about the alleged Equal Protection violations, particularly with respect to religious services and yard calls. Errington provided a second step response on August 19, 2019 (ECF No. 28-3). It appears Britton originally sent this grievance to Hall's office, but he was directed to file it through normal channels within five days (ECF No. 28-4 at 2-8). On March 17, 2020, Britton filed a grievance concerning his access to the courts, naming only Laura Hopson. He withdrew that grievance on April 15, 2020, stating that "things have improved as far as service being provided." He also stated that he wanted to close all active ARPs so his RVR appeal could move forward (ECF No. 28-4 at 9-15). Finally, Britton filed a backlogged ARP on September 3, 2019 about being charged for mailing legal documents, but it was withdrawn by the same April 15, 2020 letter (ECF No. 28-5).

Britton has provided an additional ARP letter addressed to Hall on January 19, 2019. This letter concerns ILAP services and McLeod's alleged interference with his access to the courts. Errington provided a response on February 25, 2019 (ECF No. 24-1). Britton has not offered any evidence of an appeal. He also included a November 22, 2019 letter addressed to Bulger concerning a subpoena and the November 26, 2019 response stating that the matter would not be handled by ARP (ECF No. 24-5). Finally, he included a March 10, 2020 grievance concerning medical indifference relating to an MRI (ECF No. 24-6). The other exhibits Britton

7

submitted in support of his Motion to Demonstrate that Administrative Remedies were Exhausted by Plaintiff are duplicates of the exhibits Defendants have offered in support of their Motion for Summary Judgment.

The MDOC has implemented an Administrative Remedy Program (ARP) through which prisoners may seek formal review of a complaint or grievance relating to their incarceration. This is a two-step process. *Stewart v. Woodall*, No. 2:11-cv-207-KS-MTP, 2012 WL 2088883, at *2 (S.D. Miss. May 2, 2012). First, inmates must submit their complaints to the Legal Claims adjudicator. If accepted, the grievance will be sent to the appropriate official, who issues the First Step Response. If the inmate is unsatisfied with the response, he may proceed to step two, where a final decision is made by the Superintendent, Warden, or Community Corrections Director. Only after the two steps have been completed may an unsatisfied inmate file suit. *Id.*

The Defendants concede that Britton completed these two steps with respect to grievance SMCI 19-0730, where the initial grievance was filed on July 2, 2019 (ECF No. 29 at 10-12), but they contend that it does not fully exhaust his claims. With respect to all other grievances presented to the Court, the undersigned finds that there is no evidence that Britton ever completed both steps of the process. Therefore, he failed to exhaust any claims not included in SMCI 19-0730.

SMCI 19-0730 was signed by Britton on July 2, 2019. He initially states that he had addressed his ordeal with Errington, Shelby, Barnes, and Hall. He mentions the verbal altercation with Tilley, the RVR, and Tilley's threats. He then states he

8

was transferred to Unit 8, claiming that Robinson did it out of spite and retaliation. He claims that Barnes and Shelby denied knowing about the incident and denied his request to be moved. He also mentions a disciplinary hearing with Frost and Robinson, the lack of a unit administrator signature on his RVR, and a letter he sent to Frost addressing his due process rights. He also contends that Barnes moved him to Area 2 in retaliation. He contends that the staff "failed to care about [his] safety concerns, refused [him] proper housing, . . . participated in a culture of retaliation and also violated [his] 'equal protection clause' rights" by denying him the opportunity to participate in various educational and church programs and by denying yard call. The June 23, 2019 letter to Hall that Defendants have included as part of this grievance contains an allegation about the lack of appropriate initials on the RVR, but it is primarily concerned with the alleged retaliation (ECF No. 28-3 at 17-19). The June 23, 2019 letter to Barnes concerns religious services, cell doors, the water fountain, educational services, yard calls, and the protection the inmates received (ECF No. 28-3 at 20-22).

None of the documents included with SMCI 19-0730 name Baughn, McLeod, or Bulger. Granted, a grievance does not have to identify an individual by name. *Patterson v. Stanley*, 547 Fed. App'x 510, 512 (5th Cir. 2013) (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). However, "in order to satisfy the exhaustion requirement, an inmate's grievances must provide sufficient detail such that prison officials have 'fair notice' of the issue that will form the basis of the inmate's suit." *Thomas v. Joslin*, 524 Fed. App'x 107, 110 (5th Cir. 2013) (quoting

*Johnson*, 385 F.3d at 516-17). Britton's grievance only discusses the altercation with Tilley and the resulting RVR. There is nothing that indicates this particular grievance concerns the legal services he received. Therefore, it is not sufficient to provide notice to Baughn, McLeod, and Bulger. Britton has failed to exhaust his administrative remedies with respect to any claims against them.

Britton's claims against Errington concern the denial of religious services and yard call, his failure to protect Britton from harm, his failure to provide safe conditions, and his failure to properly train his staff. Given that the June 23, 2019 letter to Barnes includes a "cc" to Errington, and Errington's Second Step response relates to the conditions of confinement, the undersigned finds that Britton has sufficiently exhausted his claims concerning the denial of religious services, yard call, failure to protect, and failure to provide safe conditions. However, Britton's grievance only mentions a lack of staff, not a failure to properly train staff. Therefore, the undersigned recommends that Britton's claim of failure to train against Errington be dismissed.

With respect to Hall, Britton's grievance states that he had written to Hall about the "ongoing ordeal," as well as the retaliation and corruption. His June 23, 2019 letter to Hall specifically cites the "lack of knowledge in the administration." Therefore, the undersigned recommends that Britton's claim of failure to supervise be allowed to proceed at the present time.

Next, Britton claims that Tilley denied him effective legal services and denied his right to access the court (ECF No. 7 at 2). Although his alleged altercation with

10

Tilley and the resulting moves and disciplinary action feature prominently in his grievance, it does not mention the denial of legal services or access to the courts. As such, the undersigned recommends that his claims against Tilley be dismissed.

Britton next claims that Barnes and Shelby denied him religious services and yard call and moved him in retaliation. He also argues that Barnes failed to protect him from harm while Shelby was responsible for the unsafe conditions of confinement. Barnes and Shelby are both named in Britton's grievance. He stated that the two denied knowing about Robinson moving him in retaliation and refused to move him to protective custody. He specifically stated that "[a]s I predicted in letters that I would continue to be harassed and retaliated against on the 26th of June 2019, I was moved to Area 2 by Warden Barnes." He concluded his grievance by stating that staff had not cared about his safety, refused him proper housing, engaged in retaliation, and denied various services. In light of these allegations in Britton's grievance, the undersigned recommends that Britton's claims against Barnes and Shelby be allowed to proceed.

Next, Britton argues that Robinson moved him in retaliation for reporting her for being in a gang, and she used the RVR Britton received to justify the move. Defendants argue that because he did not state she was a gang member in his grievance, he did not exhaust his retaliation claim against her. Nevertheless, the undersigned finds that because Britton's grievances repeatedly discussed Robinson's alleged retaliation, his claim against her should be allowed to proceed.

Finally, Britton alleges that Frost violated his right to due process because she assisted Robinson in forging a unit administrator's initials on the RVR. Again, Britton's grievance repeatedly references the RVR. He stated it originally did not have a unit administrator's signature, but when he had a hearing with Frost and Robinson, it had initials. Therefore, the undersigned recommends that his claim against Frost be allowed to proceed.

Additionally, no grievance concerns the lack of hot water or unsanitary conditions that allegedly put Britton at greater risk of contracting the flu. Therefore, that claim should also be dismissed.

The undersigned also notes that some of Britton's grievances were not filed until after his lawsuit commenced. These grievances would not satisfy the exhaustion requirement, even if Britton had proceeded through both steps of the program. "It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez*, 702 F.3d at 788.

In Britton's Reply to Defendants' Motion (ECF No. 30), he argues that he should be excused from his failure to exhaust because (1) Errington's responses to his grievances could not be overridden and should be considered a final response and (2) Errington failed to follow MDOC procedures. To the extent this is an argument that administrative remedies were unavailable to him, the undersigned finds that it is without merit. An administrative remedy is unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to

12

provide any relief to aggrieved inmates," the scheme is "so opaque that it becomes, practically speaking, incapable of use," or "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016).

No evidence has been presented showing that officers would not provide any relief. In fact, Britton's May 11, 2019 grievance concerning the denial of religious services prompted Shelby to state that she would look into the matter (ECF No. 28-2 at 7). Further, the system is not so opaque that it is incapable of use, as Britton successfully exhausted one grievance and knew enough about the system to voluntarily withdraw some grievances in order to allow another one to go forward.

Britton points to grievance responses from Errington and Errington's alleged failure to send the grievances to the correct departments. Three responses from Errington are present in the record before the Court. The first is a February 25, 2019 response to two letters Britton sent to Hall (ECF No. 24-1). One letter concerned the possibility of being moved to another facility to tutor other inmates. The other letter concern's McLeod's interference with his access to the Courts. Errington's response said the grievance was being reviewed by appropriate staff and Britton would be notified by the ARP department after they made a determination on the legitimacy of his claim. The other two responses from Errington both relate to Britton's completed grievance (ECF Nos. 24-4 at 1; 28-3 at 16 & 24). There is no evidence of machination, misrepresentation, or intimidation in

13

these responses, nor has Britton offered more than the bare allegation that Errington did not send his grievances to the correct departments.

Finally, Britton argues that he failed to receive a timely response to his grievances. However, the MDOC's Inmate Handbook states that "expiration of response time limits without receipt of a written response shall entitle the inmate to move on to the next step in the process." There is no evidence that Britton moved to the second step on any grievance except SMCI 19-0730. An untimely response is not evidence of unavailability. Therefore, Britton has not demonstrated that the administrative remedy process was unavailable to him.

### III. RECOMMENDAITON

Based on the above analysis, the undersigned recommends that Plaintiff's Motion to Demonstrate that Administrative Remedies were Exhausted by Plaintiff (ECF No. 24) be denied and Defendants' Motion for Partial Summary Judgment based on Failure to Exhaust Administrative Remedies (ECF No. 28) be granted in part and denied in part. The undersigned recommends that all of Britton's claims against Baughn, McLeod, and Bulger be dismissed; his failure to train claim against Errington be dismissed; all of his claims against Tilley be dismissed; and his conditions of confinement claim concerning the lack of hot water and unsanitary conditions also be dismissed.

### IV. NOTICE OF RIGHT TO OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve

and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 13th day of January, 2021.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE